[No. S155571. Nov. 6, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN R. ARIAS, Defendant and Appellant.

[redacted]

**COUNSEL**

Richard M. Doctoroff, under appointment by the Supreme Court, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Seth K. Schalit, John H. Deist, Laurence K. Sullivan and Jill M. Thayer, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

CHIN, J.—Health and Safety Code section 11366.8, subdivision (a),[1] prohibits the possession of a "false compartment" "with the intent to . . . conceal . . . or transport a controlled substance within the false compartment." Subdivision (d) defines "false compartment" as "any box, container, space, or enclosure that is intended for use or designed for use to conceal, hide, or otherwise prevent discovery of any controlled substance within or attached to a vehicle, including, but not limited to, any of the following: [¶] (1) False, altered, or modified fuel tanks. [¶] (2) Original factory equipment of a vehicle that is modified, altered, or changed. [¶] (3) Compartment, space, or box that is added to, or fabricated, made, or created from, existing compartments, spaces, or boxes within a vehicle."

We granted the People's petition for review in order to determine whether a violation of section 11366.8(d) requires that a defendant add to, or modify, a vehicle's original factory equipment, as opposed to using an existing premarket enclosure, such as a glove compartment, or hiding controlled substances behind a factory-installed panel in the vehicle. For the reasons discussed below, we interpret section 11366.8 to exclude from its definition

---

[1] Statutory references are to the Health and Safety Code unless otherwise noted. We refer to the subdivisions of section 11366.8 in abbreviated form, e.g., section 11366.8(a), or simply by subdivision when the statutory reference is obvious.

of "false compartment" a vehicle's original factory equipment that has not been modified, altered, or changed in any way. We therefore affirm the judgment of the Court of Appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 25, 2005, Martinez Police Officer Nick Voyvodich stopped a 1996 Lexus because it lacked a front license plate. He searched the car after he had its driver and sole occupant, John R. Arias, exit the vehicle. Voyvodich first examined the "headliner," a fabric-covered area between the sunroof and the car's frame. Unfastening Velcro strips attached to the fabric, he pulled down the headliner and looked into its interior. Finding nothing, he next looked at the area under the driver's seat, which also was empty.

When he looked up, Voyvodich noticed a plastic ball containing a white crystalline substance sticking out of a "gap" between the dashboard and steering column. Voyvodich pulled off the "loose" dashboard panel located "just above [a seated driver's] left knee" and removed the plastic, which contained three baggies containing a white substance. The space under the steering column and behind the dashboard contained wiring circuitry, and Voyvodich testified that it "didn't appear to be a storage area" or to have "a hand release or anything like a button on the glove compartment." He noted that the panel easily "clipped" in and out, apparently to allow access to the wiring for "people working on the car." Voyvodich testified it "would be hard to pull out" the baggies through the gap, that he would have needed "to manipulate [them] a lot." When Voyvodich searched defendant, he found cash in three bundles stacked in a "crisscross fashion" that contained $300, $320, and $380, respectively, plus a separate folded bundle of cash in the amount of $425.

The baggies contained methamphetamine; they weighed 27.72, 23.01, and 3.31 grams respectively. A narcotics expert testified that, in his opinion, defendant possessed the drugs for sale. The expert based his opinion on the amount found in each baggie, the cash bundles that suggested separate sales in quarter-ounce amounts, and the fact that defendant did not appear to be under the influence of a drug or in possession of drug paraphernalia.

Defendant's mother owned the Lexus defendant had been driving. When asked "Did you personally do anything to the inside of the Lexus to change or modify any aspect of . . . it so that you could put drugs in there?" defendant testified, "No, my mother would kill me if I did anything like that."

As relevant to the single issue before this court, a jury found defendant guilty of "a violation of [section] 11366.8(a) of the California Health and Safety Code (possessing false compartment) as set forth in count three of the indictment." The jury also found defendant guilty of transporting methamphetamine (§ 11379, subd. (a)), and possessing methamphetamine for sale (§ 11378). Defendant was sentenced to state prison for seven years, including a four-year concurrent term for possessing a false compartment.

The Court of Appeal reversed defendant's conviction for possessing a false compartment. It concluded the trial court gave an erroneous instruction defining "false compartment" and that the evidence presented at trial was insufficient to prove that defendant used or possessed a false compartment within the meaning of section 11366.8. We granted the People's petition for review.

## II. DISCUSSION

Section 11366.8 provides as follows: "(a) Every person who possesses, uses, or controls a false compartment with the intent to store, conceal, smuggle, or transport a controlled substance within the false compartment shall be punished by imprisonment in a county jail for a term of imprisonment not to exceed one year or in the state prison. [¶] (b) Every person who designs, constructs, builds, alters, or fabricates a false compartment for, or installs or attaches a false compartment to, a vehicle with the intent to store, conceal, smuggle, or transport a controlled substance shall be punished by imprisonment in the state prison for 16 months or two or three years. [¶] (c) The term 'vehicle' means any of the following vehicles without regard to whether the vehicles are private or commercial, including, but not limited to, cars, trucks, buses, aircraft, boats, ships, yachts, and vessels. [¶] (d) The term 'false compartment' means any box, container, space, or enclosure that is intended for use or designed for use to conceal, hide, or otherwise prevent discovery of any controlled substance within or attached to a vehicle, including, but not limited to, any of the following: [¶] (1) False, altered, or modified fuel tanks. [¶] (2) Original factory equipment of a vehicle that is modified, altered, or changed. [¶] (3) Compartment, space, or box that is added to, or fabricated, made, or created from, existing compartments, spaces, or boxes within a vehicle."

With respect to this section, the trial court instructed the jury that "[e]very person who possesses, uses, or controls a false compartment with the intent to store, conceal, smuggle or transport a controlled substance within the false compartment is guilty of a violation of Health and Safety Section 11366.8(a).

In order to prove this crime, each of the following elements must be proved: One, a person possessed, used, or controlled a false compartment; two, that person had the specific intent to conceal, smuggle or transport a controlled substance within the false compartment; a false compartment is a space in a vehicle that is neither designed nor intended for storage or transportation of personal items, but is, nevertheless, used to conceal controlled substances *even without any modification of the physical configuration of the space.*" (Italics added.)

The portion of the trial court's instruction italicized above was based on the interpretation of the statutory definition of false compartment set forth in *People v. Gonzalez* (2004) 116 Cal.App.4th 1405 [11 Cal.Rptr.3d 434] (*Gonzalez*), a case in which brothers were jointly tried and convicted of several drug offenses. One brother, who was separately convicted of possession of a false compartment, contended the plain language of section 11366.8 required a change to the " 'equipment' " of the 1990 Ford Thunderbird he was entering when arrested, " 'not simply placing something in a pre-existing space.' He argue[d] that without evidence 'the original factory equipment of the [automobile] had been "modified, altered, or changed," ' his conviction of a violation of section 11366.8 cannot stand." (*Gonzalez, supra,* 116 Cal.App.4th at p. 1413.) His argument rested on the fact that the examples of "false compartment" listed in subdivision (d) all refer to a modification, alteration, or change of a vehicle's original factory equipment. The *Gonzalez* court, however, found "nothing in the language of section 11366.8 that requires a modification, fabrication or alteration of the 'original factory equipment' of the vehicle," and concluded that a "false compartment" is "a space in a vehicle that is neither designed nor intended for storage or transportation of personal items, but is nevertheless used to conceal controlled substances, even without any modification of the physical configuration of the space." (*Id.* at p. 1414.) In reaching this conclusion, the court relied on the fact that "the statute specifies that a false compartment includes but is not limited to [the] enumerated examples," and on the general rule of statutory construction that "[u]se of the language 'including, but not limited to' in the statutory definition is a phrase of enlargement rather than limitation." (*Ibid.*)

In the present case, the Court of Appeal concluded that "[t]he history of section 11366.8 makes clear that the definition of 'false compartment' adopted in *Gonzales, supra,* 116 Cal.App.4th 1405, 1414, and the basis of the jury instruction challenged in this case, is incompatible with the purpose of the statute." For the reasons stated below, we agree with the Court of Appeal that "the *Gonzalez* court misread section 11366.8."

■ We reach this conclusion by construing section 11366.8 under established principles. "Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) We must look to the statute's words and give them their usual and ordinary meaning. (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140].) The statute's plain meaning controls the court's interpretation unless its words are ambiguous." (*Green v. State of California* (2007) 42 Cal.4th 254, 260 [64 Cal.Rptr.3d 390, 165 P.3d 118]; see also *Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 567 [67 Cal.Rptr.3d 468, 169 P.3d 889].) If the words in the statute do not, by themselves, provide a reliable indicator of legislative intent, "[s]tatutory ambiguities often may be resolved by examining the context in which the language appears and adopting the construction which best serves to harmonize the statute internally and with related statutes. (*Woods v. Young* (1991) 53 Cal.3d 315, 323 [279 Cal.Rptr. 613, 807 P.2d 455].)" (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 871 [39 Cal.Rptr.2d 824, 891 P.2d 804].) " 'Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute . . . ; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation].' [Citations.]" (*People v. Shabazz* (2006) 38 Cal.4th 55, 67–68 [40 Cal.Rptr.3d 750, 130 P.3d 519].) If the statute is ambiguous, we may consider a variety of extrinsic aids, including legislative history, the statute's purpose, and public policy. (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563].) If a statute defining a crime or punishment is susceptible of two reasonable interpretations, we ordinarily adopt the interpretation that is more favorable to the defendant. (*People v. Avery* (2002) 27 Cal.4th 49, 57 [115 Cal.Rptr.2d 403, 38 P.3d 1].)

With these principles in mind, we turn to the statutory definition of "false compartment," which is "any box, container, space, or enclosure that is *intended for use* or *designed for use to conceal, hide, or otherwise prevent discovery of any controlled substance within or attached to a vehicle,* including, but not limited to, any of the following: [¶] (1) False, altered, or modified fuel tanks. [¶] (2) Original factory equipment of a vehicle that is modified, altered, or changed. [¶] (3) Compartment, space, or box that is added to, or fabricated, made, or created from, existing compartments, spaces, or boxes within a vehicle." (§ 11366.8(d), italics added.)

■ We agree with the Court of Appeal that it would be unreasonable to interpret the phrase "intended for use or designed for use to conceal, hide, or otherwise prevent discovery of any controlled substance within or attached to a vehicle" in the above definition of false compartment to mean "intended [by

the vehicle's manufacturer] for use or designed [by the vehicle's manufacturer] for use to conceal, hide, or otherwise prevent discovery of any controlled substance within or attached to a vehicle." As the Court of Appeal aptly noted, there is no "reason to think that manufacturers of new vehicles include in their products spaces or enclosures 'intended . . . or designed' to be used to conceal or transport controlled substances." We are equally convinced that the word "intended" in the definition of false compartment does not refer to the specific intent of the defendant that is required for a conviction under *either subdivision (a) or (b)* of section 11366.8 because that would render the phrase "with the intent to store, conceal, smuggle, or transport a controlled substance" in both subdivisions meaningless or redundant.

After examining the context in which the definition of false compartment appears and adopting the construction that best harmonizes the statute internally (*Hsu v. Abbara, supra*, 9 Cal.4th at p. 871), we conclude that, although awkwardly phrased, the language in subdivision (d) of section 11366.8, italicized above, is simply an alternative reference back to subdivisions (a) and (b) of the statute. For example, subdivision (d) explains that, when a defendant is charged with possessing, using, or controlling a false compartment under subdivision (a), a false compartment is "any box, container, space, or enclosure that is *intended for use* . . . to conceal, hide, or otherwise prevent discovery of any controlled substance within or attached to a vehicle, including, but not limited to, any of the following: [¶] (1) False, altered, or modified fuel tanks. [¶] (2) Original factory equipment of a vehicle that is modified, altered, or changed. [¶] (3) Compartment, space, or box that is added to, or fabricated, made, or created from, existing compartments, spaces, or boxes within a vehicle." (§ 11366.8(d), italics added.) Alternatively, when a defendant is charged with designing, constructing, or installing a false compartment under subdivision (b), the statutory definition of false compartment would be prefaced by the phrase "designed for use" instead of the phrase "intended for use." Having adopted the construction of the language in subdivision (d) of section 11366.8, italicized above, that best serves to harmonize the statute internally, we discuss below the remainder of the subdivision.

Initially, we find it significant that, in the phrase "false compartment," the word "false" *describes the compartment*, not the individuals who use it. In that context, the word "false" has been defined by one authority as "[i]ntentionally deceptive," with two examples provided: "*a suitcase with a false bottom; false promises.*" (American Heritage Dict. (4th ed. 2000) p. 638; see also 5 Oxford English Dict. (2d ed. 1989) p. 698, col. 2 [the word "false," when describing "appearances" or "things," means "deceptive"].) While a separate zipped compartment at the bottom of a suitcase

could be used to hide illegal drugs as well as to store shoes, no reasonable person would conclude that suitcase manufacturers intended that such a separate space be used to prevent the discovery of controlled substances. The manufactured shoe compartment at the bottom of a suitcase would not fit the definition of "false bottom," i.e., a bottom *intentionally constructed to deceive* observers by concealing the "true" bottom of the suitcase. On the other hand, a suitcase with a false bottom that was intentionally designed to be *deceptive* constitutes a "false compartment" *whether or not anything is concealed within it when it is discovered.* The critical issue is whether the compartment itself was constructed in a manner to intentionally deceive an untrained observer by concealing its existence.

We agree with the Court of Appeal that "[i]f the 'false compartment' to which section 11366.8 refers need not be shown to have been designed [or] fabricated [or installed] by the defendant or someone else for the unlawful purpose of concealing a controlled substance [and any other additional purpose, such as, for example, concealing drug proceeds or an illegal weapon], the statute would provide the basis for a separate felony offense in the majority of the many cases in which drugs not in plain view are found in a vehicle." We agree with defendant that such a construction "essentially reads the 'false' out of 'false compartment,' " and that, "while the statute is focused on the 'false compartment,' respondent's construction would reduce the entire offense to the act of concealment. It is clear that this is not what the Legislature intended." As the Court of Appeal noted, while "the three examples of the statute's application provided in subdivision (d) of section 11366.8 cannot limit its meaning, because the phrase 'including, but not limited to' in that provision is a phrase of enlargement[,] a definition of 'false compartment' that required no modification of original factory equipment would be so consequential that [it] is difficult to think the Legislature would not have provided such an example if that was indeed its intention." In fact, we are convinced that, if the Legislature had intended to be included within its definition of "false compartment" original factory equipment of a vehicle that was *not* modified, altered, or changed, it would not have included those three qualifying modifiers to "original factory equipment" in its second example of a false compartment.

■ We rely on the following rules of statutory construction in reaching our conclusion that, had the Legislature intended for original factory equipment of a vehicle to be included within the term "false compartment" *whether or not the equipment had been modified, altered, or changed*, it would not have included, as a second example of a false compartment, "Original factory equipment of a vehicle *that is modified, altered, or changed*." (§ 11366.8(d)(2), italics added (second example).)

■ First, in reviewing the text of a statute, we must follow the fundamental rule of statutory construction that requires every part of a statute be presumed to have some effect and not be treated as meaningless unless absolutely necessary. "Significance should be given, if possible, to every word of an act. [Citation.] Conversely, a construction that renders a word surplusage should be avoided. [Citations.]" (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798–799 [268 Cal.Rptr. 753, 789 P.2d 934]; see also *Dyna-Med, Inc. v. Fair Employment & Housing Com., supra*, 43 Cal.3d at pp. 1386–1387.) Had the Legislature intended any and all original factory equipment in a vehicle to constitute a false compartment under section 11366.8 whenever a person hid a controlled substance inside or behind that equipment, its second example, "Original factory equipment of a vehicle that is modified, altered, or changed" (§ 11366.8(d)(2)), would have no effect and would be rendered meaningless. ■ In order for the Legislature's second example of a false compartment to have some effect, we must interpret section 11366.8 as excluding from its definition of a false compartment the vehicle's original factory equipment that has not been modified, altered, or changed.

■ A second principle of statutory construction explains that, when a particular class of things modifies general words, those general words are construed as applying only to things of the same nature or class as those enumerated. (*Scally v. Pacific Gas & Electric Co.* (1972) 23 Cal.App.3d 806, 819 [100 Cal.Rptr. 501].) This canon of statutory construction, which in the law is known as *ejusdem generis*, " 'applies whether specific words follow general words in a statute or vice versa. In either event, the general term or category is "restricted to those things that are similar to those which are enumerated specifically." ' [Citation.]" (*International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 342 [64 Cal.Rptr.3d 693, 165 P.3d 488].) ■ Here, although the definition of false compartment is not limited to the three examples provided in section 11366.8(d), the meaning of the general words "[o]riginal factory equipment of a vehicle" *within the second example* has been restricted by the Legislature to refer to factory equipment that is "modified, altered, or changed." *Ejusdem generis*, which literally means " ' "of the same kind" ' " (*Major v. Silna* (2005) 134 Cal.App.4th 1485, 1494 [36 Cal.Rptr.3d 875]), does not allow us to ignore the restrictions the Legislature set or to broaden the meaning of false compartment *with regard to original factory equipment* beyond the restrictions set forth in the Legislature's second example. The rule is "based on the obvious reason that if the Legislature had intended the general words to be used in their unrestricted sense, it would not have mentioned the particular things or classes of things which would in that event become mere surplusage." (*Scally, supra*, at p. 819; see also *Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 141 [96 Cal.Rptr.2d 485, 999 P.2d 718].)

██ "In construing criminal statutes the *ejusdem generis* rule of construction is applied with stringency. [Citations.]" (*People v. Thomas* (1945) 25 Cal.2d 880, 899 [156 P.2d 7].) For example, in *Thomas*, this court applied the rule to section 189 of the Penal Code, which, at that time, "define[d] the degrees of murder as follows: 'All murder which is perpetrated by means of poison, or lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing, [or] which is committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, or mayhem, is murder of the first degree; and all other kinds of murders are of the second degree.' " (25 Cal.2d at p. 899.) After observing that the rule "is applied with stringency" in construing criminal statutes, we explained that "the more general words 'or any other kind of willful, deliberate, and premeditated killing,' following the specifically enumerated instances of killing which are expressly declared to constitute murder of the first degree, must be construed in the light of such specifically listed types and be held to include only killings of the same general kind or character as those specifically mentioned. By conjoining the words 'willful, deliberate, and premeditated' in its definition and limitation of the character of killings falling within murder of the first degree the Legislature apparently emphasized its intention to require as an element of such crime substantially more reflection than may be involved in the mere formation of a specific intent to kill." (*Id.* at pp. 899–900.)　██　Here, similarly, we conclude the Legislature expressed its intention to define a false compartment as requiring something other than original factory-installed equipment by conjoining the words "modified, altered, or changed" in its limitation of the character of original factory equipment in subdivision (d)(2) of section 11366.8. While the proviso "including, but not limited to" "connotes an illustrative listing, one purposefully capable of enlargement" (*In re Forfeiture of $5,264* (1989) 432 Mich. 242 [439 N.W.2d 246, 252]), that proviso here applies to the general overall list of examples of "false compartment" in section 11366.8, but it cannot apply *within* the second example (subd. (d)(2)) to enlarge the category *to include original factory equipment* because the proviso would render nugatory the qualifiers that the Legislature purposefully included in that example.

██　The same principle of statutory construction applies to the restrictions involved in all three examples of a false compartment the Legislature has provided. Each example of a "false compartment" set forth in section 11366.8(d) involves using or constructing something more than the existing compartments or original factory equipment in a vehicle—either using "false" equipment in addition to original factory equipment (e.g., a false fuel tank)[2]

---

[2] The word "false" when modifying "fuel tank" (§ 11366.8(d)(1)) cannot mean intentionally deceptive because, if it did, it would be unnecessary surplusage repeating the definition of "false" in "false compartment." Instead, "false" here clearly means "not genuine" or "not real" as in false documents, false teeth, or false eyelashes. (See, e.g., American Heritage Dict.,

or making some change to the existing original factory equipment or existing compartments in the vehicle (e.g., a modified fuel tank). Together, these specific examples restrict the meaning of a false compartment to boxes, containers, spaces, or enclosures that are not simply factory-created compartments or original factory equipment.

 As noted above, the *Gonzalez* court relied on the fact that "the statute specifies that a false compartment includes but is not limited to [the] enumerated examples," and on the general rule of statutory construction that "[u]se of the language 'including, but not limited to' in the statutory definition is a phrase of enlargement rather than limitation," to conclude that a false compartment could include a space used to conceal controlled substances in a vehicle even "without any modification of the physical configuration of the space." (*Gonzalez, supra,* 116 Cal.App.4th at p. 1414.) Although the *Gonzalez* court correctly reasoned that the examples set forth in subdivision (d)'s definition of false compartment are not an exclusive list of all possible false compartments under section 11366.8, it failed to apply other applicable canons of statutory construction to the examples the Legislature did provide. Having analyzed the statute's words in those three examples of a false compartment under established canons of statutory construction, we are convinced that the Legislature intended to exclude original unaltered, unmodified, and unchanged factory equipment of a vehicle from its definition of "false compartment" in section 11366.8. To the extent *People v. Gonzalez, supra,* 116 Cal.App.4th 1405, holds to the contrary, we disapprove it.

Alternatively, were we to conclude that inclusion of the qualifiers in the second example, in conjunction with the general "including but not limited to" language, created an ambiguity regarding whether original factory equipment was excluded from the definition of false compartment in section 11366.8, we would reach the same result. Here, where the statute defining a crime is susceptible of two reasonable interpretations, we would adopt the interpretation that is more favorable to the defendant. (*People v. Avery, supra,* 27 Cal.4th at p. 57.) When a statute is ambiguous, we may consider its legislative history and the statute's purpose. (*Coalition of Concerned Communities, Inc. v. City of Los Angeles, supra,* 34 Cal.4th at p. 737.) The Senate Judiciary Committee's analysis of Assembly Bill No. 1760 (1993–1994 Reg. Sess.) observed that according to the law enforcement agency sponsors of the measure, during the first three months of 1993, "approximately 100 vehicles were interdicted at the California-Mexico border utilizing a variety of *fabricated* or *altered* storage compartments or parts in

---

*supra,* at p. 638; see also 5 Oxford English Dict., *supra,* at p. 698, col. 2 ["[c]ounterfeit, simulated, sham"].) In context, a false fuel tank within the meaning of subdivision (d)(1) is an extra, nonusable fuel tank that is added to the original factory equipment and thereby changes it.

vehicles. The sponsors contend that the *proliferation of false compartments in the drug trade is due to an increase in the number of specialized auto shops which manufacture and install such compartments. . . .* Persons who manufacture or use secret compartments can only be prosecuted for an underlying drug offense and not for the use of the compartment itself." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1760 (1993–1994 Reg. Sess.) as introduced Mar. 4, 1993, p. 2, italics added.) The Senate Judiciary Committee's analysis included the bill sponsors' assertion that "under current law, an auto shop *which builds and installs false compartments* for the transportation of controlled substances may openly admit their purpose to law enforcement officers and feel secure in the fact that they have violated no law and can not be prosecuted unless they actually possess an illegal controlled substance" and the sponsors contend that the bill "would provide a necessary tool for law enforcement efforts to combat increasing use of false compartments in the drug trade." (*Ibid.*, italics added.) This legislative history reveals the legislative intent to punish the individual who manufactures false compartments or who uses false compartments that are fabricated by someone other than the manufacturer of the original vehicle equipment.

Based on our statutory construction analysis of section 11366.8(d), we conclude that the trial court's instruction that a space or enclosure in a vehicle can constitute a "false compartment" within the meaning of subdivision (a) of section 11366.8, "even without any modification of the physical configuration of the space," misinformed the jury and constituted error. Again, to the extent *People v. Gonzalez, supra,* 116 Cal.App.4th 1405, holds to the contrary, we disapprove it. The Attorney General's argument that such an interpretation eliminates the "scienter" requirement for crimes proscribed in the section ignores the fact that a defendant cannot be found guilty of possession, use, or control of a false compartment unless the prosecution can establish that he or she possessed, used, or controlled the false compartment with the specific intent to "store, conceal, smuggle, or transport a controlled substance." (§ 11366.8(a).) The remaining question is whether the error was prejudicial in this case.

At trial, Officer Voyvodich testified he first saw the plastic ball containing the baggies of methamphetamine because it was sticking out of a "gap" between the dashboard and steering column of the 1996 Lexus defendant was driving. Voyvodich said the drugs were stuffed between the steering column and adjacent wiring behind part of the dashboard and that he easily removed that "loose" dashboard panel because it clipped in and out to facilitate access to the electrical circuitry in that area. The prosecutor never asked the officer whether he tried to determine whether this space, or any other part of the Lexus, was standard in that model or whether it had been modified, altered, or changed in any way in order to prevent the discovery of controlled substances. Voyvodich addressed the issue only when asked on

cross-examination whether he had spoken with a Lexus dealer or mechanic to ascertain whether the "headliner" he examined was standard in that model. Voyvodich answered "no"; he also conceded that he did not personally know whether the headliner "was a standard feature of this particular model." Nothing in his testimony suggests that Voyvodich made any such inquiry with respect to the space in which the drugs were found. Apart from defendant's uncontradicted testimony that he did not make any change to, or modification of, his mother's Lexus, the officer's testimony constitutes the only evidence that touched on whether the original factory equipment in the Lexus had been modified, altered, or changed.

The prosecutor told the jury in her opening statement that she was confident it would find defendant guilty of transporting methamphetamine "in a *secret* compartment inside the car. A compartment that is not used primarily for storing items, such as the glove compartment." In her closing argument, the prosecutor told the jury the place where the drugs were found was a "hidden compartment," although anyone would "be able to see that methamphetamine" in the "big gap" as they were "getting into that driver's seat." She argued the space in which the drugs were found is not a place "where you are going to put your wallet. It's not where you are going to put your registration. This is solely for the purpose of harboring these drugs . . . ." Significantly, the prosecutor never suggested to the jury that any of the original factory equipment of the Lexus had been modified, changed, or altered in order to create a space that was intended to prevent the discovery of controlled substances.

Here, where no evidence was presented suggesting there had been an aftermarket modification of, or alteration to, the original factory equipment of the vehicle in which illegal drugs were found, we conclude the trial court's instruction that a false compartment is a space in a vehicle used to conceal controlled substances "even without any modification of the physical configuration of the space" was prejudicial. In addition, we agree with the Court of Appeal that, "entirely apart from the instructional error, [defendant's] conviction for using a 'false compartment' cannot stand for the independent reason that the evidence was insufficient to sustain it."

### III. DISPOSITION

The judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Werdegar, J., Moreno, J., and Corrigan, J., concurred.

**BAXTER, J.,** Concurring.—I agree with the majority that defendant's conviction for using a false compartment is not supported by substantial evidence. As the majority explains, a false compartment within the meaning of

Health and Safety Code section 11366.8 (section 11366.8) is a compartment that is "constructed in a manner to intentionally deceive an untrained observer by concealing its existence," analogous to a suitcase with a false bottom. (Maj. opn., *ante*, at p. 179.) In this case, the compartment defendant used was the space under the steering column and behind the dashboard. Although this area is not ordinarily used for storing personal property, its existence is apparent to anyone. This compartment is no more false than the crevices between the seats of a vehicle, the area between the floormats and floor of a vehicle, or the glove box. Any of these compartments might be used to conceal drugs, but the fact that these compartments existed would be apparent to a reasonable observer. They are akin to a separate zippered shoe compartment at the bottom of a suitcase, which similarly could be used to conceal drugs but which in no way could be characterized as false. Because the evidence did not support a finding that defendant possessed or used a false compartment within the meaning of section 11366.8, the conviction must be reversed.

The analysis above is sufficient to dispose of this case, inasmuch as defendant may not be retried on this count. (*Burks v. United States* (1978) 437 U.S. 1, 18 [57 L.Ed.2d 1, 98 S.Ct. 2141].) But the majority goes on to hold that a compartment that is false within the meaning given above—i.e., that is constructed in a manner to intentionally deceive an untrained observer by concealing its existence—is nonetheless not false within the meaning of the statute if the compartment is part of the vehicle's original factory equipment. In other words, the majority holds that a false compartment does not qualify as a false compartment within the meaning of the statute unless the compartment is a product of aftermarket changes to original factory equipment. The distinction the majority purports to draw between a defendant's intent to conceal drugs in a vehicle's false compartment that is installed or created aftermarket (which is a felony) and a defendant's same intent to use the same false compartment when that compartment is part of the vehicle's original factory equipment (and, hence, innocent conduct) is unnecessary to the decision in this case, is not supported by the statutory language, and leads to absurd results. I write separately to distance myself from that analysis.

Section 11366.8, subdivision (d), provides: "The term 'false compartment' means any box, container, space, or enclosure that is intended for use or designed for use to conceal, hide, or otherwise prevent discovery of any controlled substance within or attached to a vehicle, including, but not limited to, any of the following: [¶] (1) False, altered, or modified fuel tanks. [¶] (2) Original factory equipment of a vehicle that is modified, altered, or changed. [¶] (3) Compartment, space, or box that is added to, or fabricated, made, or created from, existing compartments, spaces, or boxes within a

vehicle." Plainly, the main clause of this sentence does not require a false compartment to be a modification, alteration, or change to the original factory equipment. Indeed, subdivision (d) prefaces its definition with the word "any," which means "without limit and no matter what kind." (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934].)

In reasoning that section 11366.8, subdivision (d) included any aftermarket false compartment but excluded the same false compartment if offered as part of the vehicle's original factory equipment, the majority begins by echoing the Court of Appeal's contention that " 'a definition of "false compartment" that required no modification of original factory equipment would be so consequential that [it] is difficult to think the Legislature would not have provided such an example if that was indeed its intention.' " (Maj. opn., *ante*, at p. 179.) The apparent consequence of such a construction, according to the Court of Appeal, is that "the statute would provide the basis for a separate felony offense in the majority of the many cases in which drugs not in plain view are found in a vehicle," such as when drugs are hidden in "[t]he space between the cushions of the back seat of a Chevrolet." However, the Court of Appeal (and, by extension, the majority here) was mistaken since, as discussed above, the crevices between the seats do not constitute false compartments, nor would the mere fact that drugs were hidden in a vehicle necessarily mean that the compartment in which they were found was false. The test is, as the majority elsewhere acknowledges, "whether the compartment itself was constructed in a manner to intentionally deceive an untrained observer by concealing its existence." (Maj. opn., *ante*, at p. 179.) *Who* constructed it and *when* in the chain of distribution it was created are simply not relevant to that determination.

The majority's other rationale for excluding false compartments that are part of the vehicle's original factory equipment rests on a strained interpretation of the examples provided in section 11366.8, subdivision (d), and the inappropriate invocation of the *ejusdem generis* canon of construction. The majority fails to recognize that "canons of statutory construction are merely aids to ascertaining probable legislative intent" (*Stone v. Superior Court* (1982) 31 Cal.3d 503, 521, fn. 10 [183 Cal.Rptr. 647, 646 P.2d 809]) and should not be applied to defeat the underlying legislative intent (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1391 [241 Cal.Rptr. 67, 743 P.2d 1323]). Our ultimate task is to select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and to avoid an interpretation that would lead to absurd consequences. (*People v. Jenkins* (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224].) The canons identified by the majority are often helpful to that determination, but

they are neither "magical incantation[s]" nor "immutable rule[s]." (*Estate of Banerjee* (1978) 21 Cal.3d 527, 539 [147 Cal.Rptr. 157, 580 P.2d 657].) These canons do not apply in particular where, as here, "no manifest reason exists why other persons or things than those enumerated should not be included and thus exclusion would result in injustice," nor should the canons apply "to a statute the language of which may fairly comprehend many different objects, some of which are mentioned merely by way of example, without excluding others of similar nature." (*Id.* at p. 539, fn. 10.)

The majority relies on *ejusdem generis*, the general principle that when a particular class of things modifies general words, those general words are construed as applying only to things of the same nature or class as those enumerated. The majority reasons that this canon of statutory construction does not allow us "to broaden the meaning of false compartment *with regard to original factory equipment* beyond the restrictions set forth in the Legislature's second example" (maj. opn., *ante*, at p. 180), which refers to original factory equipment "that is modified, altered, or changed" (§ 11366.8, subd. (d)). However, out of all the cases cited by the majority, only one applied the doctrine of *ejusdem generis* where, as here, the statute prefaced its list of examples with the words "including, but not limited to" (*Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116 [96 Cal.Rptr.2d 485, 999 P.2d 718] (*Kraus*))—and even *Kraus* provides no support for the majority.

*Kraus* considered whether a landlord's charge for prelease administrative services was an unrefundable security fee prohibited by Civil Code former section 1950.5. At the time, section 1950.5, subdivision (b), read as follows: " 'As used in this section, "security" means any payment, fee, deposit or charge, including, but not limited to, an advance payment of rent, used or to be used for any purpose, including, but not limited to, any of the following: [¶] (1) The compensation of a landlord for a tenant's default in the payment of rent. [¶] (2) The repair of damages to the premises, exclusive of ordinary wear and tear, caused by the tenant or by a guest or licensee of the tenant. [¶] (3) The cleaning of the premises upon termination of the tenancy. [¶] (4) To remedy future defaults by the tenant in any obligation under the rental agreement to restore, replace, or return personal property or appurtenances, exclusive of ordinary wear and tear, if the security deposit is authorized to be applied thereto by the rental agreement.' " (*Kraus, supra*, 23 Cal.4th at p. 139.) We observed that "[a]ll of the examples of a security set forth in subdivision (b) of Civil Code section 1950.5 are charges intended to secure the landlord against *future* tenant defaults" and that the section therefore excluded "[a] fee imposed at the outset of the tenancy to reimburse the landlord for expenses incurred for such purposes as providing application

forms, listing, interviewing, screening the applicant, checking credit references, and similar purposes." (*Kraus, supra*, 23 Cal.4th at p. 141, italics added.) The latter fees served to recoup the immediate prelease costs incurred by the landlord and therefore were outside the plain meaning of a security as " 'something given, deposited, or pledged to make certain the fulfillment of an obligation.' " (*Id.* at p. 140.) Here, by contrast, a compartment comes within the ordinary meaning of a false compartment *regardless* of whether the compartment is part of the vehicle's original factory equipment or is added at a later stage of the marketing process. The majority's construction thus fails to accord the proper significance to the proviso "including, but not limited to," which "suggests that a broad construction was intended" (*In re Forfeiture of $5,264* (1989) 432 Mich. 242 [439 N.W.2d 246, 251, fn. 7]) and "connotes an illustrative listing, one purposefully capable of enlargement." (*Id.*, 439 N.W.2d at p. 252; accord, *Turtle Island Restoration v. National Marine* (9th Cir. 2003) 340 F.3d 969, 975 ["Congress used the phrase 'including but not limited to' and in so doing, contemplated that the list of potential obligations that the United States had under the Agreement was not exhausted by those listed in the subsection."]; *Cooper Distributing Co. v. Amana Refrigeration, Inc.* (3d Cir. 1995) 63 F.3d 262, 280 ["since the phrase 'including, but not limited to' plainly expresses a contrary intent, the doctrine of *ejusdem generis* is inapplicable"]; *State ex rel. Stenehjem v. Philip Morris Inc.* (2007) 2007 ND 90 [732 N.W.2d 720, 729] ["Use of the words, 'including, without limitation,' reflects a contrary intention that an enumeration is not exhaustive, rendering the doctrine of *ejusdem generis* inapplicable."].)

Instead of *Kraus*, I find instructive *People v. Clark-van Brunt* (1984) 158 Cal.App.3d Supp. 8 [205 Cal.Rptr. 144], which is cited in *In re Forfeiture of $5,264, supra*, 439 N.W.2d at page 255. *Clark-van Brunt* construed Health and Safety Code section 11014.5, subdivision (a), which defines "drug paraphernalia." That subdivision provides that drug paraphernalia means "all equipment, products and materials of any kind which are designed for use or marketed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, . . . ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of this division" and then provides a list of such items, preceded by the proviso that drug paraphernalia "includes, but is not limited to [the following]." The appellate department concluded that "[t]he clear import of the phrase 'but is not limited to' signifies that the Legislature intended the definition of 'drug paraphernalia' to be expansive and flexible. Thus, the expressly enumerated items are simply exemplary of those items which may constitute 'drug paraphernalia' rather than delineating the parameters of the subject." (*People v. Clark-van Brunt, supra*, 158 Cal.App.3d at pp. Supp. 17–18.) Here, where a statute uses similar words concerning a similar topic, I would similarly construe the phrase "but not limited to" to be expansive and flexible and the items

following to be exemplary but not exclusive of the items covered by the statute. (See Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1760 (1993–1994 Reg. Sess.) as introduced Mar. 4, 1993, p. 2 [bill prohibiting false compartments "is similar to the law prohibiting the possession of drug paraphernalia"].)[1]

Moreover, the majority offers no reason why the Legislature would have wanted to make the possession, use, or control of false compartments with the intent to conceal drugs therein a felony, unless the compartment is part of the vehicle's original factory equipment, in which case the possession of the compartment with the requisite intent *is no crime at all under this section.* The harm occasioned by the concealment of drugs in a false compartment that is part of the vehicle's original factory equipment is identical to the harm occasioned by the concealment of drugs in the same compartment that was installed as an aftermarket modification. (See *People v. Giordano* (2007) 42 Cal.4th 644, 660–661 [68 Cal.Rptr.3d 51, 170 P.3d 623]; accord, *Zurich American v. ABM Industries* (2d Cir. 2005) 397 F.3d 158, 165 [applying *ejusdem generis* "would require us to ignore the phrase 'but not limited to' " in the insurance policy].)

Finally, the majority's interpretation of the statute runs afoul of the canon of statutory construction that directs us to interpret legislative enactments to avoid absurd results. (See *People v. Valladoli* (1996) 13 Cal.4th 590, 604 [54 Cal.Rptr.2d 695, 918 P.2d 999].) In seeming recognition of the implausibility of its construction of the statute, the majority seeks refuge in the rule of lenity, under which an ambiguous penal statute is construed, in very limited circumstances, in favor of the defendant. The rule, of course, does not apply every time there are two or more reasonable interpretations of a penal statute. (*People v. Cole* (2006) 38 Cal.4th 964, 986 [44 Cal.Rptr.3d 261, 135 P.3d 669].) Rather, the rule applies " 'only if the court can do no more than guess what the legislative body intended; there must be an *egregious* ambiguity and uncertainty to justify invoking the rule.' " (*People v. Avery* (2002) 27 Cal.4th 49, 58 [115 Cal.Rptr.2d 403, 38 P.3d 1], italics added.) No such uncertainty exists here. Under the majority's approach, section 11366.8 would *not* apply

---

[1] The majority's construction of section 11366.8, subdivision (d) is also internally inconsistent. The majority theorizes that "had the Legislature intended for original factory equipment of a vehicle to be included within the term 'false compartment' *whether or not the equipment had been modified, altered, or changed,* it would not have included, as a second example of a false compartment, 'Original factory equipment of a vehicle *that is modified, altered, or changed,*' " in subdivision (d)(2) of section 11366.8. (Maj. opn., *ante,* at p. 179.) Yet, in subdivision (d)(1), the Legislature included an example of a "fuel tank" that was either itself "[f]alse" *or* "altered, or modified"—thus encompassing original factory equipment (a fuel tank) that is false. The majority correctly observes that the word "false" with respect to a fuel tank "means 'not genuine' or 'not real,' " but that indicates only that the fuel tank is "an extra, nonusable fuel tank" (maj. opn., *ante,* at pp. 181–182, fn. 2)—not that it was an addition, alteration, or modification of the vehicle's original factory equipment.

to a defendant who buys a new car with a factory-installed false compartment and uses the compartment to conceal drugs, but *would* apply to a defendant who asked the dealer to install the same compartment in the prior year's model of that vehicle. At the same time, drug dealers will be motivated to conceal their goods in the false bottom and walls of a trailer, as long as the trailer was built with those compartments originally. This would be flatly inconsistent with the Legislature's expressed concern that, "under current law, an auto shop which builds and installs false compartments for the transportation of controlled substances may openly admit their purpose to law enforcement officers and feel secure in the fact that they have violated no law and can not be prosecuted unless they actually possess an illegal controlled substance." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1760 (1993–1994 Reg. Sess.) as introduced Mar. 4, 1993, p. 2 (Senate Committee Analysis).)

Indeed, the majority's interpretation rips a substantial hole in the coverage of the statute. An illegitimate boat or trailer manufacturer that includes a false compartment for drug smuggling in the vehicle will be immune from liability under this statute, as will the individuals who actually possess or use the false compartment to store or conceal drugs. And if a legitimate vehicle manufacturer creates a false compartment for a lawful purpose—say, to safeguard jewelry—drug dealers once again will be immune from using those compartments to smuggle drugs. It is difficult to reconcile this cribbed construction of the statute with the Legislature's expectation that this law "would provide a necessary tool for law enforcement efforts to combat increasing use of false compartments in the drug trade." (Sen. Com. Analysis, *supra*, at p. 2.)

The majority's unduly narrow construction of the statute also will shift the inquiry at trial from whether a compartment is false to whether a false compartment has been "modified, altered, or changed in any way." (Maj. opn., *ante*, at p. 174.) Is it sufficient if the defendant has unscrewed a panel of an original compartment that would otherwise qualify as false and reattached it, but in doing so has screwed it in less tightly than before, resulting in a slightly larger interior space? Has the original factory equipment been "changed in any way" if the defendant does no more than remove a panel of such a compartment and reattach it? What if the defendant changes the panel's color or places a sticker on it? Does equipment installed by the dealer, such as a spoiler or upgraded audio equipment containing false compartments, qualify as original factory equipment? I find no evidence that the Legislature was concerned with these questions or believed that public safety turned on the answers to them. (Cf. *Dyna-Med, Inc. v. Fair Employment & Housing Com., supra*, 43 Cal.3d at pp. 1387–1388 [punitive

damages "are neither equitable nor corrective" and thus are not included within the administrative remedies under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.)].) The line the majority draws is unnecessary to resolve the case and may well have unintended adverse consequences.

For the foregoing reasons, I join only in the judgment that there was insufficient evidence of a false compartment under section 11366.8.