Filed 4/12/22  P. v. Eddy CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C092547 |
| Plaintiff and Respondent, | (Super. Ct. No. 16F2585) |
| v. | |
| MORGAN EASTWOOD EDDY, | |
| Defendant and Appellant. | |

Defendant Morgan Eastwood Eddy stabbed his friend to death with a kitchen knife.  A jury found defendant guilty of first degree murder with personal use of a deadly weapon and the trial court sentenced him to 25 years to life plus one year in prison.  On appeal, defendant contends (1) there was insufficient evidence of premeditation and deliberation to support a verdict of first degree murder; and (2) the jury instruction given for first degree murder did not accurately reflect the law.  Finding no merit to defendant's contentions, we affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

A.      *Factual history*

Lawrence Ledford and Carl Cohen lived together in an apartment (the apartment). Defendant and Cohen were friends, and defendant would frequently come by the apartment complex to "hang out" with people who lived nearby. Pete Jeppesen also was Cohen's friend and would visit the apartment once or twice a week. Defendant and Jeppesen were friends but often argued with each other.

One afternoon, defendant and five or six other people were in the apartment with Ledford, Cohen, and Jeppesen. Ledford asked defendant and the other visitors to leave, which they did. Jeppesen, who was helping Cohen, stayed in the apartment. Ledford left the apartment and began to drive away, but "something didn't feel right," so he drove back to the apartment. When he returned, he saw that defendant and a few people had returned to the apartment. At Ledford's request, Ledford's friend went into the apartment and told the visitors again to leave. Ledford also told Cohen and Jeppesen that defendant was not allowed back in the apartment. Once Ledford saw defendant and the others depart again, Ledford drove away.

Two or three minutes later, defendant returned to the apartment once more. Defendant and Jeppesen began to argue outside the apartment near a garbage dumpster. Jeppesen was a little angry and told defendant that he was not allowed on the property, Ledford did not want him there, and he needed to go. Defendant responded, "What is it to you? Who are you? Who are you to tell me I can't?" Defendant and Jeppesen continued to argue and soon began pushing and shoving each other. They had their hands on each other's shoulders, sides and arms in a "standing-up wrestling position" and argued whether defendant had to leave.

After about 15 minutes of this fighting, Jeppesen, still arguing with defendant, walked inside the apartment. Defendant entered the apartment about one minute later. Jeppesen repeatedly told defendant that Ledford did not want defendant there.

2

The two men wrestled in the entryway to the apartment. Defendant put Jeppesen in a headlock and tried to pull Jeppesen into the apartment while Jeppesen attempted to break defendant's hold. Eventually, defendant pulled Jeppesen into the apartment, where they wrestled and slammed into the kitchen walls for three to four minutes. As they tussled, they moved into the living room and fell on the floor between the living room and the kitchen. Jeppesen kicked defendant twice in the face.

Jeppesen got on top of defendant, who was lying on his stomach, "not really with much choice," pinned defendant down, kneed him in the back, and repeatedly said, "You have to leave," and, "If I let up, will you leave?" Defendant refused. Jeppesen reared his body up a couple of feet and slammed his knee onto defendant's back. Defendant responded, "[O]w." Jeppesen repeated this act six to eight more times, each time saying, "If I let up, will you go?" According to Cohen, who witnessed the conflict, Jeppesen "got the best of [defendant] in the fight." Cohen yelled, "Stop fighting. You guys are friends." The two men appeared to reach an agreement that defendant would leave, so they stopped wrestling and stood up. Cohen observed that defendant "wasn't feeling too good." At that point, "it sounded like it was over to [Cohen], like they had agreement."

Jeppesen walked outside and stood near the front door smoking a cigarette, his back to the apartment. Cohen thought defendant grabbed something in the apartment, but he could not say whether it was a knife. There was a "lull" for "split seconds." Three to four seconds after Jeppesen left, defendant walked outside. Jeppesen turned towards defendant just as defendant struck Jeppesen three times. Jeppesen grabbed his side and said, "You stabbed me." He fell to the ground, bleeding and nonresponsive. Defendant went back inside the apartment, grabbed his bag and jacket from the living room, and ran out of the apartment. The apartment manager yelled "stop" a couple of times and chased after defendant. After chasing defendant through the City Hall campus, he eventually lost sight of defendant at a nearby canal.

3

Ledford received a phone call that Jeppesen had been stabbed, so he returned to the apartment complex, where Redding Police Department officers had arrived. Ledford was eventually able to enter his apartment and saw a 12-inch serrated knife with two points at the end under the kitchen table. He recognized it as the knife that a friend had used that morning to cut cinnamon rolls and then left on the kitchen counter. Ledford called the police department to report the knife. A police officer entered the apartment, kneeled down, turned on her flashlight, and saw the knife under the table. The knife had white and red residue on the blade.

Jeppesen's autopsy revealed that he suffered a 1.4-inch-long, five-inch-deep stab wound to his lower right flank, which cut his lower aorta and lower vena cava, causing him to bleed to death.

B.     *Verdict and sentencing*

A jury found defendant guilty of first degree murder (Pen. Code, § 187, subd. (a)).[1] The jury also found true the allegation that defendant personally used a deadly weapon (a knife) in the commission of the murder (§ 12022, subd. (b)(1)). The trial court sentenced defendant to 25 years to life plus one year in prison.

DISCUSSION

I

*Substantial Evidence of Premeditation and Deliberation*

Defendant contends there was insufficient evidence at trial to support the jury's finding that defendant engaged in premeditation and deliberation before killing Jeppesen. He accordingly asks us to reduce his first degree murder conviction to murder in the second degree. We decline to do so, as we conclude that substantial evidence supports the first degree murder conviction.

---

[1]     Undesignated statutory references are to the Penal Code.

4

A.     *Applicable legal principles*

In *People v. Anderson* (1968) 70 Cal.2d 15, relied upon by both parties, our Supreme Court articulated a framework for assessing the sufficiency of the evidence of premeditation and deliberation.  In doing so, it "identified three factors commonly present in cases of premeditated murder:  '(1) [F]acts about how and what defendant did prior to the actual killing which show that the defendant was engaged in activity directed toward, and explicable as intended to result in, the killing—what may be characterized as "planning" activity; (2) facts about the defendant's prior relationship and/or conduct with the victim from which the jury could reasonably infer a "motive" to kill the victim, which inference of motive, together with facts of type (1) or (3), would in turn support an inference that the killing was the result of "a pre-existing reflection" and "careful thought and weighing of considerations" rather than "mere unconsidered or rash impulse hastily executed" [citation]; (3) facts about the nature of the killing from which the jury could infer that the manner of killing was so particular and exacting that the defendant must have intentionally killed according to a "preconceived design" to take his victim's life in a particular way for a "reason" which the jury can reasonably infer from facts of type (1) or (2).' " (*People v. Koontz* (2002) 27 Cal.4th 1041, 1081, italics omitted.)

" 'When evidence of all three categories is not present, "we require either very strong evidence of planning, or some evidence of motive in conjunction with planning or a deliberate manner of killing." [Citation.]  But these categories of evidence . . . "are descriptive, not normative." [Citation.]  They are simply an "aid [for] reviewing courts in assessing whether the evidence is supportive of an inference that the killing was the result of preexisting reflection and weighing of considerations . . . ." [Citation.]' [Citation.]" (*People v. Elliot* (2005) 37 Cal.4th 453, 470-471.)

"A verdict of deliberate and premeditated first degree murder requires more than a showing of intent to kill.  (§ 189 ['willful, deliberate and premeditated killing' as first degree murder].)  'Deliberation' refers to careful weighing of considerations in forming a

5

course of action; 'premeditation' means thought over in advance. [Citations.] 'The process of premeditation and deliberation does not require any extended period of time. "The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly. . . ." [Citations.]' [Citation.]" (*People v. Koontz, supra*, 27 Cal.4th at p. 1080.)

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.]' [Citation.]" (*People v. Battle* (2011) 198 Cal.App.4th 50, 61-62.)

B. *Analysis*

Here, when viewed in the light most favorable to the judgment, we conclude the evidence presented was sufficient to support the jury's finding that defendant committed a willful, deliberate, premediated murder.

First, a reasonable jury could infer that defendant engaged in planning activity. After defendant and Jeppesen reached an apparent agreement that defendant would leave, they ceased fighting and Jeppesen went outside to smoke. During that brief "lull," defendant stood up from the floor between the living room and kitchen, went into the kitchen, and grabbed a knife. He then walked outside and approached an unwitting Jeppesen from behind, stabbing Jeppesen in the side just as Jeppesen turned around. A jury could conclude that defendant's act of going to the kitchen, arming himself with a knife, and then going outside to kill Jeppesen, all after their physical altercation had concluded, constituted planning activity. (*People v. Elliot, supra*, 37 Cal.4th at p. 471 ["That defendant armed himself [with a knife] prior to the attack 'supports the inference that he planned a violent encounter' "]; *People v. Sanchez* (1995) 12 Cal.4th 1, 33-34,

6

disapproved on other grounds as stated in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22 [defendant engaged in planning activity where his accomplice obtained a knife immediately after beating the victim and then stabbed the victim to death]; *People v. Thomas* (1992) 2 Cal.4th 489, 517-518 [defendant engaged in planning activity by returning to his car to get rifle and ammunition before committing murders].) This evidence is sufficient for a jury to infer planning activity even where, as here, the planning activity "occur[ed] over a short period of time." (*Sanchez, supra*, 12 Cal.4th at p. 34.)

The jury also heard sufficient evidence establishing defendant's motive to kill. Defendant and Jeppesen had argued repeatedly in the past. On the day of the murder, defendant and Jeppesen had a lengthy verbal and physical altercation, in which Jeppesen refused to let defendant remain in the apartment. Jeppesen also bested defendant in their fight, holding defendant down and repeatedly kneeing him in the back until defendant conceded he would leave. Thus, a jury could infer that defendant deliberately intended to kill Jeppesen as revenge for Jeppesen's repeated demands that defendant leave, during which Jeppesen overpowered and hurt defendant, forcing defendant to relent and admit defeat. (See, e.g., *People v. Miranda* (1987) 44 Cal.3d 57, 87 [defendant's anger at store clerks for refusing to sell him beer constituted motive]; see also *People v. Anderson, supra*, 70 Cal.2d at p. 27 [motive to kill may be inferred from "facts about the defendant's prior relationship and/or conduct with the victim," italics omitted].)

Moreover, the manner of killing constitutes evidence of intent. While an unsuspecting Jeppesen stood outside, defendant took a 12-inch-long serrated knife and stabbed Jeppesen five inches deep in the area of his body containing his vital organs. The stab wound cut a major artery and vein, causing him to quickly bleed to death. A reasonable jury could infer that the personal and deliberate attack, conducted in a matter likely to ensure Jeppesen's immediate death, evinced defendant's intent to kill. (See, e.g., *People v. Morris* (1959) 174 Cal.App.2d 193, 197 [evidence of intent where "the

7

weapon employed was a knife, six to seven inches long, and therefore likely to produce death when used in the manner and upon the portion of the victim's body which the witnesses described"].)

Finally, even when the evidence may support a contrary finding, as defendant suggests, it is not our role to reweigh the evidence where, as here, the circumstances reasonably justify the trier of fact's findings. (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)[2] Based on the foregoing, we conclude substantial evidence supports the jury's verdict of first degree murder.

## II

### *CALCRIM No. 521*

Defendant next argues that the trial court violated his Sixth and Fourteenth Amendment rights by instructing the jury with CALCRIM No. 521, which he contends contains an inaccurate definition of premeditation.

CALCRIM No. 521 instructs the jury on the elements of first degree murder. The challenged language in the instruction provides: "The defendant acted with premeditation if he decided to kill before completing the acts that caused death." Defendant insists that this statement is inaccurate because it instructs that defendant premeditated the killing "so long as he decided to kill Jeppesen before stabbing him," rather than requiring reflection and a preconceived design. He contends the error was not harmless and seeks reversal and remand on this basis. We conclude CALCRIM No. 521 adequately instructed the jury on the correct, applicable law.

---

[2] Similarly, although defendant argues that his manner of flight was consistent with an impulsive, rash killing, a reasonable jury could reach a different conclusion. Specifically, a jury could find that because defendant discarded the knife under the table where it could not be seen, grabbed his personal items, and fled into the canal, hiding for hours until apprehended by the police, defendant concealed the evidence and harbored consciousness of guilt consistent with a premeditated attack.

"We determine independently whether a jury instruction correctly states the law. [Citation.] Our task is to determine whether the trial court ' "fully and fairly instructed on the applicable law." ' [Citation.] We consider the instructions as a whole as well as the entire record of trial, including the arguments of counsel. [Citation.] If reasonably possible, instructions are interpreted to support the judgment rather than defeat it. [Citation.]" (*People v. McPheeters* (2013) 218 Cal.App.4th 124, 132.) Defendant's failure to object to the instruction's language in the trial court does not forfeit his contention on appeal. (See *People v. Smithey* (1999) 20 Cal.4th 936, 976-977, fn. 7, citing § 1259.)

Here, the jury was instructed with the standard version of CALCRIM No. 521 as follows:

"The defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation. The defendant acted *willfully* if he intended to kill. The defendant acted *deliberately* if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant acted with *premeditation* if he decided to kill before completing the act(s) that caused death.

"The length of time the person spends considering whether to kill does not alone determine whether the killing is deliberate and premeditated. The amount of time required for deliberation and premeditation may vary from person to person and according to the circumstances. A decision to kill made rashly, impulsively, or without careful consideration is not deliberate and premeditated. On the other hand, a cold, calculated decision to kill can be reached quickly. The test is the extent of the reflection, not the length of time." (Original italics.)

CALCRIM No. 521 sufficiently instructed the jury with the correct applicable legal principles governing first degree murder. According to our Supreme Court, in the context of first degree murder, " ' " 'premeditated' means 'considered beforehand.' " ' "

9

(*People v. Houston* (2012) 54 Cal.4th 1186, 1216; *People v. Jennings* (2010) 50 Cal.4th 616, 645 [same]; *People v. Halvorsen* (2007) 42 Cal.4th 379, 419 [same].) Thus, CALCRIM No. 521's language stating that "[t]he defendant acted with *premeditation* if he decided to kill before completing the act that caused death" is consistent with our Supreme Court's definition of premeditation.

Further, CALCRIM No. 521 contains additional language clarifying that a defendant's mere decision to kill, by itself, is not sufficient to establish premeditation. Rather, it explains that "[a] decision to kill made rashly, impulsively, or without careful consideration is not deliberate and premeditated," and that "[t]he test is the extent of the reflection, not the length of time." Thus, the instruction expressly provides that an impulsive decision, made without reflection, does not constitute premeditation. Consequently, rather than *remove* the element of reflection required for a finding of first degree murder, as defendant contends, the instruction specifically *requires* that the jury find defendant guilty only if it finds defendant reflected and considered his actions before killing.

The element of reflection is similarly embedded in the instruction's directive that defendant must not only act with premeditation, but he also must act willfully (if "he intended to kill") and deliberately (if "he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill"). The combined requirements of " ' "willful, deliberate, and premeditated" ' " emphasize that the jury must find defendant acted with " 'substantially more reflection than may be involved in the mere formation of a specific intent to kill.' " (*People v. Arias* (2008) 45 Cal.4th 169, 181.) Thus again, for the jury to find defendant guilty, it must first find defendant carefully weighed the consequences of his actions; in other words, it must find defendant first reflected on his decision to kill.

CALCRIM No. 521's language is therefore distinguishable from the jury instruction considered by our Supreme Court in *People v. Bender* (1945) 27 Cal.2d 164,

10

a case relied on by defendant. In *Bender*, the court found a first degree murder instruction was erroneous because it "excludes from the required showing any deliberation and premeditation between the intent and the act of killing" and "eliminate[s] any necessity for deliberation or premeditation in forming the intent." (*Id*. at p. 183.) Here, as discussed, CALCRIM No. 521 requires findings of deliberation, premeditation, and willfulness. It also embeds the concept of meaningful reflection within those requirements. Thus, taken as a whole, CALCRIM No. 521 comports with the legal requirements of premeditated murder, and it fairly and fully instructed the jury on the applicable law.

DISPOSITION

The judgment is affirmed.


      KRAUSE      , J.


We concur:


      MAURO      , Acting P. J.


      HOCH      , J.