[No. B039225. Second Dist., Div. Two. Nov. 15, 1989.]

T. L. ENTERPRISES, INC., Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES, Defendant and Respondent.

**COUNSEL**

Stephens, Berg, Lasater, Schulman & Rogers and Mark G. Ancel for Plaintiff and Appellant.

De Witt W. Clinton, County Counsel, and Albert Ramseyer for Defendant and Respondent.

**OPINION**

GATES, J.—T. L. Enterprises, Inc., a California corporation, appeals from the judgment entered following trial to the court of its action for refund of property taxes against the County of Los Angeles. Appellant contends: "A. The damage incurred by the improvement was 'sudden,' if such a requirement exists. B. The legislative history of section 51, subdivision (c), requires the conclusion that the damage to appellant's improvement is a 'disaster, misfortune, or calamity.'"

This case involves a two-story, multitenant office building in Agoura, which was built in 1979. Its original design called for the upper three feet of ground elevation to be removed and replaced with a blanket of compacted fill on which the building would be constructed. The plan was later changed, and the foundation, except for the southwest corner, was placed directly on bedrock of a type which expands upon contact with moisture. The fill used at the southwest corner is even more expansive than the bedrock. As a result, the building has suffered from the differential expansion and settling of the underlying bedrock and fill.

By 1983 appellant had observed cracking of the slab, wallboard, and glass. Appellant engaged structural engineers to analyze the building's condition. The engineers noticed some heaving of the slab, but found no indication of structural distress or hazard.

In 1985 appellant retained a construction consulting firm to prepare a report concerning the condition for insurance purposes. At that time the maximum variation in elevation of the building slab was five inches. The firm concluded that the property was not hazardous and could be occupied. It nevertheless recommended correcting the source of the problem, by replacing three feet of material under the building with decomposed granite and installing a new foundation system. The firm opined that unless this were done, appellant's costs for such maintenance and repairs as replacing and rehanging exterior panels, grading the concrete slab to relevel it, and patching the leaking roof would continue to be high. Although the building remained serviceable, by its calculation the cost of the work, estimated at $4,031,310, would exceed the value of the building.

At the time of its completion in 1979 the fair market value of the building, as determined by the county assessor, was $1,580,000. By 1987 the fair market value of the land alone exceeded the full assessment for both land and the improvements thereon. Nonetheless, appellant filed an application for reduction of its 1987 property tax assessment based upon its claim it had the right so to do if the market value of the improvements had declined significantly below their trended base year value.

On April 13, 1988, the assessment appeals board denied without prejudice appellant's application for reduction of assessment because the question of whether the damage to the property was caused by "disaster, misfortune or calamity," within the meaning of section 51, subdivision (c) of the Revenue and Taxation Code was a legal issue only. The board postponed determination of the 1987 assessed value of the property pending the court's determination of this action.

At trial oral and documentary evidence was introduced, no factual determinations having been made by the assessment appeals board. The court entered judgment for respondent, and this appeal followed.

Unless property changes ownership or undergoes new construction, under Proposition 13 (Cal. Const., art. XIII A) its assessed value is its market value on March 1, 1975, plus an annual inflation factor limited to two percent. This "base year value," however, "may be reduced to reflect substantial damage, destruction or other factors causing a decline in value."

(Cal. Const., art. XIII A, § 2, subd. (b).) Section 51, sudivision (b), of the Revenue and Taxation Code[1] provides that if the total value of the property, including land and improvements, falls below the property's base year value, then the assessed value may be reduced. Since it is conceded the market value of the property's land alone is greater than its total assessed value, this ground of relief is eliminated. The statutes upon which appellant relies, sections 51, subdivision (c),[2] and 170, treat the value of land and improvements separately in providing for a reduced assessment due to disaster, misfortune, or calamity.

■ Appellant's first contention lacks merit. Contrary to its position, the evidence shows the damage to the property occurred gradually over an extended period of time. Its vice president noticed cracks in the walls which developed over the years, and it was some time before he became aware the condition involved more than ordinary settling. One of its expert witnesses, John Gaffey, testified the problem with the property "probably spread out over a long period of time." Appellant's second expert witness, Robert Ellis, in explaining photographs submitted on appellant's behalf which document the ongoing nature of the problem, stated that between 1985 and 1987, "The gauge shows the building or the two pieces of concrete have moved apart approximately a quarter of an inch. And that there has been either uplifting or settling of about a 16th of an inch." The experts concluded that they could not predict the extent of future damage due to the condition. Indeed appellant, at page eight of its reply brief, refers to the damage as "an eight-year total economic destruction of an office building."

---

[1] All subsequent statutory references are to the Revenue and Taxation Code.

Section 51 provides in relevant part: "For purposes of subdivision (b) Section 2 of Article XIII A of the California Constitution, for each lien date after the lien date in which the base year value is determined pursuant to Section 110.1, the taxable value of real property shall be the lesser of: [¶] (a) Its base year value, compounded annually since the base year by an inflation factor . . . . [¶] (b) Its full cash value, as defined in Section 110, as of the lien date, taking into account reductions in value due to damage, destruction, depreciation, obsolescence, removal of property, or other factors causing a decline in value. [¶] (c) If the property was damaged or destroyed by disaster, misfortune, or calamity and the board of supervisors of the county in which the property is located has not adopted an ordinance pursuant to Section 170, or removed by voluntary action by the taxpayer, the sum of (1) the lesser of its base year value of land determined under subdivision (a) or full cash value of land determined pursuant to subdivision (b), plus (2) the lesser of its base year value of improvements determined under subdivision (a) or the full cash value of improvements determined pursuant to subdivision (b), which shall then become the base year value until such property is restored, repaired, or reconstructed or other provisions of law require establishment of a new base year value. [¶] (d) If the property was damaged or destroyed by disaster, misfortune or calamity and the board of supervisors in the county in which the property is located has adopted an ordinance pursuant to Section 170, its assessed value as computed pursuant to Section 170."

[2] It appears that since Los Angeles County has adopted an ordinance pursuant to section 170 (see L.A. County Ord. § 4.64.020), subdivision (d) of section 51, rather than subdivision (c), is the controlling statutory reference. Both subdivisions (c) and (d), however, refer to "property damaged or destroyed by disaster, misfortune or calamity."

Appellant's second contention also lacks merit. Subdivision (d) of section 51 and section 170[3] provide for computation of assessed value treating land and improvements separately only where property has been damaged or destroyed by "disaster, misfortune or calamity." The objective of the provisions, read in their entirety, is to afford financial relief to the owners of property physically damaged or destroyed by an unforeseeable occurrence beyond their control.

Webster's Third New International Dictionary (1981) defines disaster at page 643 as "a sudden calamitous event producing great material damage, loss, and distress." It similarly defines calamity at page 314 as "an extraordinarily grave event marked by great loss and lasting distress and affliction." Misfortune, "an instance of bad luck" (id., at p. 1443), connotes a less serious incident than disaster or calamity. All require at a minimum some event out of the ordinary.

Appellant has not shown that its loss was caused by such an occurrence. Although appellant undoubtedly considers the decrease in value a misfortune, it was the result of ordinary natural forces. Because it took place over a period of years appellant was not in the position of the victim of earthquake, flood, or fire: it could take steps to alleviate the consequences.

Relief in such circumstances, moreover, would be inconsistent with the short limitations period for filing an application for reassessment pursuant

---

[3] Section 170 provides in relevant part: "(a) Notwithstanding any provision of law to the contrary, the board of supervisors may, by ordinance, provide that every assessee of any taxable property, or any person liable for the taxes thereon, whose property was damaged or destroyed without his fault, may apply for reassessment of that property as provided herein. [¶] To be eligible for reassessment the damage or destruction to the property must have been caused by any of the following: [¶] (1) A major misfortune or calamity, in an area or region subsequently proclaimed by the Governor to be in a state of disaster . . . . [¶] (2) A misfortune or calamity. [¶] (3) A misfortune or calamity which, with respect to a possessory interest in land owned by the state or federal government has caused the permit or other right to enter upon the land to be suspended or restricted. As used in this paragraph, 'misfortune or calamity' includes a drought condition such as existed in this state in 1976 and 1977. [¶] The application for reassessment may be filed within the time specified in the ordinance, or, if no time is specified, within 60 days of such misfortune or calamity . . . . [¶] (b) Upon receiving a proper application, the assessor shall appraise the property and determine separately the full cash value of land, improvements and personalty immediately before and after the damage or destruction. If the sum of the full cash values of the land, improvements and personalty before the damage or destruction exceeds the sum of the values after the damage by five thousand dollars ($5,000) or more, the assessor shall also separately determine the percentage reductions in value of land, improvements and personalty due to the damage or destruction. The assessor shall reduce the values appearing on the assessment roll by the percentages of damage or destruction computed pursuant to this subdivision, and the taxes due on the property shall be adjusted as provided in subdivision (e); provided, however, that the amount of the reduction shall not exceed the actual loss."

to section 170. It "may be filed within the time specified in the ordinance, or, if no time is specified, within 60 days of such misfortune or calamity . . . ." (§ 170, subd. (a).) Clearly a condition which develops over years is not of the type anticipated.

The specification of drought as a misfortune or calamity in subdivision (a)(3) of section 170, despite the usual worsening of the condition over time, reinforces the view that in general a distinct occurrence is required. The subdivision appears to be tailored to provide relief for a situation which the authors believed would otherwise be excluded.

Moreover, the one example of a disaster, misfortune, or calamity referred to in the legislative history provided by appellant, the destruction of a house by fire, supports the view that an unusual incident, not a gradually deteriorating condition, is required. (See Assem. Rev. and Tax. Com. Rep. (Mar. 5, 1979) on Assem. Bill No. 156, p. 116.)

Respondent cites *Matheson* v. *Commissioner of Internal Revenue* (2d Cir. 1931) 54 F.2d 537, 539, in which damage to pilings which were inadequately sheathed was found not to arise from a casualty under federal tax law: "In our opinion, the word 'casualty' as used in section 214 (a) (6) [now contained in § 165(c)] is an event due to some sudden, unexpected, or unusual cause. Anything less than this renders it hardly distinguishable from depreciation from ordinary wear and tear which cannot be deducted by a taxpayer in the case of property that is not used in trade or business. [Citation.]"

Casualty is defined as "an unfortunate occurrence" or "disaster." (Webster's New Internat. Dict. (3d ed. 1981) p. 349.) Although "disaster, misfortune or calamity" may include events not deemed a "fire, storm, shipwreck, or other casualty" (Int.Rev. Code, § 165(c)), in the present circumstances the reasoning of *Matheson* v. *Commissioner of Internal Revenue* holds true. The loss to appellant's building was due not to "disaster, misfortune or calamity," as required by section 51, subdivision (d), but rather to "the ordinary action of the elements upon a poorly constructed building." (*Matheson* v. *Commissioner of Internal Revenue, supra,* 54 F.2d at p. 539.)

Because we agree with the trial court that the damage to appellant's property was not the result of a "disaster, misfortune or calamity," we need not decide whether appellant is precluded from relief by its failure to file an application pursuant to section 170.

The judgment is affirmed.

Roth, P. J., and Fukuto, J., concurred.