RUBIN, J.,
Dissenting.—I respectfully dissent. I generally adopt the principled opinion written by Justice Márquez of the Sixth District in Nguyen v. Western Digital Corp. (2014) 229 Cal.App.4th 1522 [178 Cal.Rptr.3d 897] (Nguyen).
For the most part, my dissent accepts all the facts and legal authorities offered by the majority. There is no material dispute between the majority and dissent on the events underlying our review of the order granting summary judgment: The mother of plaintiff Dominique Lopez had worked in a manufacturing facility operated by defendant Sony Electronics, Inc., while pregnant with Dominique. Her mother was exposed to several teratogenic chemicals that caused Dominque’s birth defects. Teratogenic chemicals are chemicals that cause birth defects. (People ex rel. Brown v. Tri-Union Seafoods, LLC (2009) 171 Cal.App.4th 1549, 1556 [90 Cal.Rptr.3d 644].)[1]
Nor is there any material disagreement between the majority and dissent on the relevant authorities that must be considered in reviewing the summary *457 judgment in this case. The statutes of limitations in question, Code of Civil Procedure sections 340.4 and 340.8, are at the heart of this appeal.[2] The canons of statutory construction are well known, the legislative history is not in dispute, the few cases that in any way address the issue presented here are cited, and the standard of review is settled. I acknowledge that on its face each statute superficially appears to cover this litigation. My disagreement with the majority is in the final conclusion that it reaches: Even though section 340.8 deals specifically with toxic torts and was enacted after section 340.4, section 340.8 does not mean what it says and is trumped by the shorter statute of limitations of section 340.4 for prenatal and birth injuries. This is so even though, as the majority observes, section 340.4 has its genesis in the 19th century when claims for toxic torts were generally unknown. I find instead that section 340.8 is the applicable statute of limitations, and conclude that summary judgment should have been denied.
A. Brief Review of the Applicable Statutes
1. Section 340.4. Section 340.4 deals with prenatal and birth injuries, was enacted in 1992, took effect on January 1, 1994, and continues in substance Civil Code former section 29. (Stats. 1992, ch. 163, §§ 16, 161, pp. 731, 842; 22 Cal. Law Revision Com. Rep. (1992).) Section 340.4 provides: “An action by or on behalf of a minor for personal injuries sustained before or in the course of his or her birth must be commenced within six years after the date of birth, and the time the minor is under any disability mentioned in Section 352 shall not be excluded in computing the time limited for the commencement of the action.”
Section 340.4 has a lengthy legislative bloodline. As enacted in 1872, Civil Code former section 29 provided: “A child conceived, but not yet born, is to be deemed an existing person, so far as may be necessary for its interests in the event of its subsequent birth.” No express private right of action was created by Civil Code former section 29 and, obviously, no statute of limitations was provided. At the time, section 352—also enacted in 1872— provided tolling for most actions while an injured party was a minor.
In Scott v. McPheeters (1939) 33 Cal.App.2d 629, 631 [93 P.2d 562], the appellate court held that Civil Code former section 29 created a cause of action for prenatal injuries. It also suggested in dictum that under Code of Civil Procedure section 352 the statute of limitations for prenatal injuries was *458 tolled during the child’s minority.[3] Responding to this dictum, the Legislature in 1941 amended Civil Code former section 29 to include a six-year statute of limitations starting from the date of birth. The amendment also expressly provided that minority tolling under section 352 did not apply to prenatal actions. (See Young v. Haines (1986) 41 Cal.3d 883, 892 [226 Cal.Rptr. 547, 718 P.2d 909] (Young).) The amended statute became section 340.4 in 1992 and essentially has carried forward the language from the 1941 enactment.
Although tolling during the period of minority under section 352 is expressly made inapplicable to section 340.4 actions, claims for prenatal injuries are subject to the delayed discovery rule, based on the actual or constructive knowledge of the child’s parents. (Young, supra, 41 Cal.3d at p. 890, fn. 4.) By case law, malpractice actions against health care providers based on prenatal injuries (no such claims are present here) are carved out of section 340.4 and are covered by the medical malpractice statute of limitations, section 340.5. (Young, at pp. 891-892, 894.)
2. Section 340.8. Section 340.8 deals with toxic torts, was enacted in 2003, and took effect on January 1, 2004. (Stats. 2003, ch. 873, p. 6398; Cal. Const., art. IV, § 8, subd. (c).) It provides:
“(a) In any civil action for injury or illness based upon exposure to a hazardous material or toxic substance, the time for commencement of the action shall be no later than either two years from the date of injury, or two years after the plaintiff becomes aware of, or reasonably should have become aware of, (1) an injury, (2) the physical cause of the injury, and (3) sufficient facts to put a reasonable person on inquiry notice that the injury was caused or contributed to by the wrongful act of another, whichever occurs later. [¶] ■ ■ ■ [¶]
“(c) For purposes of this section:
“(1) A ‘civil action for injury or illness based upon exposure to a hazardous material or toxic substance’ does not include an action subject to Section 340.2 [the statute of limitations for asbestos exposure actions] or 340.5 [the medical malpractice statute of limitations].
“(2) Media reports regarding the hazardous material or toxic substance contamination do not, in and of themselves, constitute sufficient facts to put a *459 reasonable person on inquiry notice that the injury or death was caused or contributed to by the wrongful act of another.
“(d) Nothing in this section shall be construed to limit, abrogate, or change the law in effect on the effective date of this section with respect to actions not based upon exposure to a hazardous material or toxic substance.”
3. Minority Tolling under Section 340.8. Under section 352, actions subject to the statutes of limitation set forth in chapter 3, title 2, part 2 of the Code of Civil Procedure are tolled while the plaintiff is a minor. (§ 352; Nguyen, supra, 229 Cal.App.4th at p. 1540.) Because section 340.8 is found within that portion of the Code of Civil Procedure, section 340.8 actions are also subject to minority tolling. (Nguyen, at pp. 1540-1541.)
B. The Nguyen Decision
Central to this appeal is the reconciliation of sections 340.4 and 340.8 in cases presenting prenatal or birth injuries caused by toxic torts. Reconciliation may not be the best word because, on their face, the two statutes appear almost irreconcilable. A reasonable argument can be made that because section 340.4 covers prenatal injuries, the statute includes prenatal injuries from tortious exposure to toxic substances. Equally reasonable from facial inquiry is that because section 340.8 covers toxic torts, it also includes toxic torts causing prenatal injuries. Given that both statutes have superficial appeal, the judicial task is to determine whether there is anything in the language of the statutes that informs us which statute the Legislature intended to be paramount. That is essentially how Nguyen analyzed the issue. (Nguyen, supra, 229 Cal.App.4th at p. 1547.) Nguyen, which was decided after summary judgment was entered in this case, held that section 340.8, and not section 340.4, provides the limitations period applicable to actions for injuries caused by prenatal exposure to toxic substances.[4]
The majority cites Nguyen but devotes little discussion of its analysis. Because I find the Sixth District’s opinion compelling, I address the decision in more detail.
The Nguyen court based its analysis on the plain language of section 340.8. (Nguyen, supra, 229 Cal.App.4th at pp. 1545-1548.) The court acknowledged that nothing in the statute or the legislative history mentioned section 340.4 by name or evidenced an intent to exclude toxic tort cases from its reach. *460 {Nguyen, at pp. 1547-1548, 1550-1551.) At the time section 340.8 became law, personal injury claims were subject to different limitations periods based in part on the plaintiffs age at the time of injury. (Nguyen, at p. 1546.) These included personal injuries generally for adults and minors (§ 335.1), tolling for minors (§ 352), and birth and prenatal injuries (§ 340.4). In the face of these disparate provisions, Nguyen found that the Legislature’s use of the all-inclusive term “any” when defining the reach of section 340.8 for civil actions for exposure to various toxic or hazardous substances showed an intent to enact a statute with broad application to any and all actions for injuries based on exposure to toxic substances regardless of the age of the victim. (Nguyen, at p. 1546.)
The Nguyen court found further support for its conclusion in the Legislature’s choice to exempt from section 340.8 two types of claims—those for asbestos exposure and those for professional negligence by health care providers. Those causes of action were subject to specific statutes of limitations—sections 340.2 and 340.5 which, respectively, deal exclusively with those two claims. The Legislature’s failure to include section 340.4 actions as an exception when it enacted section 340.8 supported the conclusion that, except for those claims expressly excluded, the Legislature intended section 340.8 to apply broadly to all other claims based on exposure to toxic substances, including those based on prenatal injuries. (Nguyen, supra, 229 Cal.App.4th at p. 1548.)
The Nguyen court also drew an analogy to our Supreme Court’s decision in Young, supra, 41 Cal.3d 886, which considered whether a minor’s action for medical malpractice that occurred before or at the time of birth was subject to section 340.4 and therefore timely under the discovery rule, or was untimely under section 340.5, which, with certain exceptions, requires minors under the age of six to sue by their eighth birthday. Although both provisions on their face appeared to govern {Young, at p. 894), the Young court was swayed by the fact that section 340.5 was the newer provision and was part of a comprehensive legislative scheme designed to address the medical malpractice insurance crisis. As a result, the later, more specific statute controlled. (Nguyen, supra, 229 Cal.App.4th at p. 1549, citing Young, at pp. 891-892, 894.)
Similar to Young, the Nguyen court noted that sections 340.8 and 340.4 each superficially appeared to govern the claims that Dominique now makes. Although section 340.8 may not have been part of a comprehensive statutory scheme to deal with claims for exposure to toxic substances, the Nguyen court found an analogous purpose in subdivision (d) of section 340.8, which provides that the statute shall not be construed to limit, abrogate, or otherwise change the laws in place when section 340.8 took effect, other than those *461 based on exposure to toxic substances. Subdivision (d) showed an intent to treat victims of toxic substance exposures differently and thereby change the existing law for all actions based on exposure to toxic or hazardous substances. (Nguyen, supra, 229 Cal.App.4th at pp. 1546-1550.)[5]
Upon careful analysis of the statute, the Nguyen court found the statutory language unambiguous. Accordingly it found it unnecessary to turn to the legislative history in order to construe section 340.8. (Nguyen, supra, 229 Cal.App.4th at p. 1550.) Even so, the Nguyen court saw nothing in the legislative history that altered its interpretation. The legislative history addressed only the Legislature’s intent to codify the discovery rule for toxic tort exposure cases, as well as abrogate an appellate court decision holding that media reports about the harmful substance might constitute inquiry notice under the delayed discovery rule. (Nguyen, at p. 1551.)
Although the section 340.8 legislative history did not mention section 340.4 or the intent to create an exception to that statute, it also failed to state that “the Legislature intended that a different limitations period apply if the exposure occurred before or during the plaintiff’s birth. In other words, there is no indication that the Legislature intended, and it makes no sense, for there to be a different discovery rule (e.g., regarding inquiry notice and media reports) depending on whether the toxic exposure occurred before or after birth. Nothing in the legislative history suggests that the Legislature intended that section 340.4 (prenatal injuries) rather than section 340.8 (toxic exposures), should apply to prenatal toxic exposure cases, or that section 352 should not apply to such cases.” (Nguyen, supra, 229 Cal.App.4th at p. 1551.)
C. Nguyen Is Correct and Its Holding Applies Equally Here
I agree with Nguyen that the plain language of section 340.8 shows that it supersedes section 340.4 where an action for prenatal or birth injuries is based on exposure to toxic or hazardous substances. It is a well-established rule of statutory construction that use of the term “any” means without limit and no matter what kind. (People v. Arias (2008) 45 Cal.4th 169, 187 [85 Cal.Rptr.3d 1, 195 P.3d 103]; California State Auto. Asso. Inter-Insurance Bureau v. Warwick (1976) 17 Cal.3d 190, 195 [130 Cal.Rptr. 520, 550 P.2d 1056] [term has been considered broad, general, and all-embracing since the earliest days of statehood].)
Giving “any” its customary interpretation, I conclude that when the Legislature said section 340.8 applies to “any” civil action for injuries caused *462 by exposure to toxic or hazardous substances, it intended to include actions for prenatal exposure to such substances that were previously covered by section 340.4. The majority opinion essentially requires sifting the term “any” to exclude certain types of actions, thereby transmuting “any” to “some.”
My conclusion is also bolstered by subdivision (d) of section 340.8, which states that nothing in that section “shall be construed to limit, abrogate, or change the law in effect on the effective date of this section with respect to actions not based upon exposure to a hazardous material or toxic substance.” (Italics added.) The Nguyen court held that this language showed a legislative intent to treat victims of toxic substance exposures differently from other personal injury victims, but did not expound upon its reasoning. (Nguyen, supra, 229 Cal.App.4th at p. 1550.)
I believe the full import of this language becomes apparent by holding it up to an analytical mirror and examining its corollary obverse: Section 340.8 does “limit, abrogate, and change the law in effect upon the effective date . . . with respect to actions” that are based on exposure to toxic substances. That language shows a clear intent to affect section 340.4, albeit by necessary inclusion, if not express iteration. The Legislature’s choice to specifically exempt asbestos exposure and medical malpractice claims from its reach, but no others, also supports my interpretation. (In re Michael G. (1988) 44 Cal.3d 283, 291 [243 Cal.Rptr. 224, 747 P.2d 1152] (Michael G.) [rule of statutory construction that where exceptions to a general rule are specified, other exceptions may not be implied or presumed]; Nguyen, supra, 229 Cal.App.4th at pp. 1546-1548; Steven S. v. Deborah D. (2005) 127 Cal.App.4th 319, 327 [25 Cal.Rptr.3d 482] [courts presume Legislature knows how to create an exception to statutory provisions, and where it does not do so, we presume it did not intend to do so].)
I agree with the majority that the legislative history of section 340.8 never mentions section 340.4 and focuses on the goal of codifying the delayed discovery rule as announced in three appellate decisions, while rejecting a narrow formulation of that rule in another.[6] By the same token, however, it also does not mention an intent to restrict section 340.8 to toxic substance exposure cases to minors and adults. Given the plain language analysis, I agree with Nguyen that the legislative history has no interpretive effect. (Whaley v. Sony Computer Entertainment America, Inc. (2004) 121 *463 Cal.App.4th 479, 486 [17 Cal.Rptr.3d 88] [while legislative history may help interpret an ambiguous statute, it cannot change the plain meaning of clear language, and courts may not rewrite the law or give the words an effect different from the plain meaning of the language used].)
Even if I considered the legislative history, it would still point us in the same direction. The Legislative Counsel’s Digest is the official summary of the legal effect of a bill and is relied upon by the Legislature throughout the legislative process. As a result, even though it is not binding, it is entitled to great interpretive weight. (Joannou v. City of Rancho Palos Verdes (2013) 219 Cal.App.4th 746, 759 [162 Cal.Rptr.3d 158].) The digest states that section 340.8 was intended to create “a separate statute of limitations for a civil action for injury or illness based upon exposure to a hazardous material or toxic substance other than asbestos, as specified.” (Legis. Counsel’s Dig., Assem. Amends. to Sen. Bill No. 331 (2003-2004 Reg. Sess.) as amended Sept. 8, 2003, italics added.) That statement is consistent with my interpretation: section 340.8 created a new statute of limitations for all toxic substance exposure actions except for those types of actions specifically excepted.
This point is reinforced by a senate committee bill analysis, which said that the bill clarified that it “does not apply to actions relating to [asbestos exposure or medical malpractice] and specifies that the bill does not limit, abrogate, or change the law in effect on the effective date of the bill with respect to actions not based upon exposure to a hazardous material or toxic substance.” (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 331 (2003-2004 Reg. Sess.) as amended Sept. 8, 2003, p. 3.) By tying together those two provisions—the exceptions for asbestos and medical malpractice actions and the effect on existing laws—this analysis also shows that section 340.8 was designed to have broad effect and apply to all other toxic substance exposure cases.
I also observe that if the Legislature had intended to adopt only a discovery rule for toxic tort cases, it could have simply amended section 335.1, which deals generally with personal injuries and which at that time applied to toxic torts. Instead, the Legislature adopted a new statute of limitations for exposure to hazardous materials and toxic substances, stated its intent that the new statute apply to any action for such exposure, and excluded from its ambit asbestos and medical malpractice causes of action.
If, as the majority concludes, the Legislature’s sole purpose in enacting section 340.8 was to make clear that media reports do not in themselves create inquiry notice in toxic tort cases, what purpose could there conceivably be in excluding from that rule cases in which the injury occurred prenatally or during childbirth? Was the Legislature intending that media reports do create inquiry notice in prenatal and birth toxic tort cases?
*464 The majority rejects the application of section 340.8 to prenatal injuries because, among other things, it would produce an absurd result—various prenatal injuries would be subject to different statutes of limitations depending on the nature of the injury. (Maj. opn., ante, at pp. 455—456.) Absurd results are indeed to be avoided in statutory construction, but the result described by the majority is consistent with the general framework of our statutes of limitations. Different wrongs are governed by different periods of limitation. That is what our Supreme Court recognized in Young when it excluded prenatal and childbirth medical malpractice claims from section 340.4. It strikes me as no more absurd to exclude toxic claims from the prenatal statute of limitations than to exclude medical malpractice claims from the prenatal statute of limitations. In both instances the unborn and just born are subject to the same rules as minors and adults.[7]
More fundamentally, that the Legislature would conclude that toxic tort claims should be subject to a period of limitation different than the general personal injury statute of limitation (§ 335.1) and other statutes is neither surprising nor absurd. On the contrary, it is historically quite understandable. As one commentator has observed, and our own experience undoubtedly reveals, “Toxic torts is a relatively new area of the law . . . .” (Eggen, The Synergy of Toxic Tort Law and Public Health: Lessons From a Century of Cigarettes (2008) 41 Conn L.Rev. 561, italics omitted.) Not only is the law relatively new, the nature of the harm from exposure to toxic and hazardous substances differs significantly from more typical personal injuries. “Insidious disease cases are fundamentally different from . . . snapshot torts . . . .” (Green, The Paradox of Statutes of Limitations in Toxic Substances Litigation (1988) 76 Cal. L.Rev. 965, 972-973 (Green).)[8] The reason for this difference is fairly self-evident: “[Djiagnosis of toxic related disease is almost always an uncertain enterprise, particularly in the early stages of the disease. Lack of understanding of biological and physiological mechanisms, absence of serious dysfunction, and the slowly progressive nature of some diseases contribute to the difficulties of diagnosis. . . . [¶] The combination of lengthy latency periods and diagnostic difficulties is a unique feature of toxic substances cases for purposes of statutes of limitations analysis: No temporally discrete event exists that encompasses the defendant’s breach and the plaintiffs injury. Instead, insidious disease litigation involves an extended chronology of causation unlike traditional snapshot torts.” (Id. at pp. 975-976, fn. *465 omitted, cited in Buttram v. Owens-Corning Fiberglas Corp. (1997) 16 Cal.4th 520, 529-530 [66 Cal.Rptr.2d 438, 941 P.2d 71].)
The development of special statutes of limitations for toxic torts is also a recent phenomenon. The first of these statutes—section 340.2 for asbestos exposure—was enacted in 1979. Before 1979, toxic tort claims were governed by the then one-year statute of limitations for personal injuries. The cause of action accrued at the time of the wrongful act. (Nelson v. Flintkote Co. (1985) 172 Cal.App.3d 727, 730-731 [218 Cal.Rptr. 562].)[9]
Even before the effective date of section 340.2, appellate courts recognized that considerations not present in traditional personal injury actions required the statute of limitations for toxic torts to be treated differently than traditional claims. Velasquez v. Fibreboard Paper Products Corp. (1979) 97 Cal.App.3d 881 [159 Cal.Rptr. 113] (Velasquez) was the first case in California to apply a discovery rule to the accrual of a cause of action for a toxic tort. Even though there was no intervening change in law and the then applicable statute of limitations was silent on the subject, the court relied in part on federal law and found strong policy reasons for the discovery rule. “We agree that in a negligence or strict liability action, discovery is the appropriate test for determining accrual of a cause of action for a progressive disease [asbestosis].” (Id. at pp. 887-888.)[10]
After section 340.2 was enacted, the courts were presented with whether that statute was to be applied retroactively. The Court of Appeal in both Blakey v. Superior Court (1984) 153 Cal.App.3d 101, 105 [200 Cal.Rptr. 52] and Puckett v. Johns-Manville Corp. (1985) 169 Cal.App.3d 1010, 1016 [215 Cal.Rptr. 726] answered the question in the affirmative. The Legislature “intended the special statute to be remedial in purpose, subject not only to liberal construction but to retroactive application in a manner which would encompass the causes of action of as many victims of asbestosis as possible.” (Puckett, at pp. 1015-1016.)
A third Court of Appeal opinion upholding the retroactive application of section 340.2 noted that some of the traditional policy reasons for statutes of limitations were not necessarily present in toxic tort cases. “Moreover, the traditional justifications for statutes of limitations do not apply here since *466 there is no real problem of loss of witnesses’ memories. An asbestos manufacturer’s defense necessarily rests on documentary evidence which is typically kept in the course of business. (O'Stricker v. Jim Walter Corp. (1983) 4 Ohio St.3d 84 [447 N.E.2d 727].) Nor can the alleged toxic tortfeasors claim they are entitled to psychological protection from surprise suits when most knew or should have known back in the 1950’s of the toxic nature of the materials they were supplying. (Note, The Fairness and Constitutionality of Statutes of Limitations for Toxic Tort Suits (1983) 96 Harv.L.Rev. 1683, 1685.)” (Nelson v. Flintkote Co., supra, 172 Cal.App.3d at p. 735.) Justice Thompson, the author of the statement, was writing 31 years ago, far before the advent of backup hard drives, data storage clouds and other high-tech devices. Certainly documents are now easier to store and retrieve than they were in 1985.
As I see it, section 340.8 is just another extension of the Legislature’s intent to treat toxic tort cases differently from other personal injury actions. It should be applied here.
I would reverse the order granting summary judgment.
Appellant’s petition for review by the Supreme Court was granted August 24, 2016, S235357. Werdegar, J., did not participate therein.

 This is not to say that the underlying facts will never be disputed, only that because summary judgment was granted solely on statute of limitations grounds, for the present appeal there is no dispute about the factual claims underlying plaintiff’s lawsuit.

 All undesignated statutory references are to the Code of Civil Procedure.

 In denying a petition for rehearing, the Supreme Court stated that the Court of Appeal’s discussion of section 352 was not “necessary to the decision and it does not affect the soundness of the conclusion reached by the District Court of Appeal.” (Scott v. McPheeters, supra, 33 Cal.App.2d at p. 640.)

 The facts of Nguyen are substantially similar to ours, but have no particular relevance to our analysis. In brief, the plaintiff sued in 2010 when she was 16, alleging that in 1994 her then-pregnant mother was exposed to various teratogenic chemicals while working for the defendant.

 While I acknowledge that section 340.8 is not part of a comprehensive scheme, nor is section 340.4 part of a comprehensive scheme.

 The Legislature said it intended to disapprove the holding in McKelvey v. Boeing North American, Inc. (1999) 74 Cal.App.4th 151 [86 Cal.Rptr.2d 645] (media reports establish inquiry notice), and to codify the delayed discovery rule as described in Norgart v. Upjohn Co. (1999) 21 Cal.4th 383 [87 Cal.Rptr.2d 453, 981 P.2d 79]; Jolly v. Eli Lilly & Co. (1988) 44 Cal.3d 1103 [245 Cal.Rptr. 658, 751 P.2d 923]; and Clark v. Baxter Healthcare Corp. (2000) 83 Cal.App.4th 1048 [100 Cal.Rptr.2d 223], (Legis. Counsel’s Dig., Assem. Amends. to Sen. Bill No. 331 (2003-2004 Reg. Sess.) as amended Sept. 8, 2003, p. 1.)

 Under the interpretation I propose, section 340.4 still has much life left to it. Prenatal and birth injuries can occur through many forms of negligent and intentional acts that fall outside the scope of medical malpractice or toxic substance exposures, and those acts remain subject to section 340.4. Automobile accidents, premises liability, and assaults all come to mind.

 By “snapshot torts” the author gave as examples “shootings, and streetcar and occupational accidents” probably because he was discussing the development of the statute of limitations for personal injury claims in the early 20th century. (Green, supra, at p. 972.) Easily added are automobile accidents, simple assaults and batteries, and other impact torts.

 At the time, the one-year personal injury statute of limitations was former section 340, subdivision (3). The applicable statute of limitations is now two year's and is found in section 335.1.

 When Velasquez was filed, section 340.2 had been enacted but was not yet effective, so the appellate court was interpreting the then one-year' personal injury statute of limitations of former section 340, subdivision (3). (See Nelson v. Flintkote Co., supra, 172 Cal.App.3d at pp. 730-731.)